**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **REPUBLIC BANK, INC., a Utah Industrial Bank,** | |
| **Plaintiff,**<br>**v.** | **MEMORANDUM DECISION AND ORDER** |
| **WEST PENN ALLEGHENY HEALTH SYSTEMS, INC., a Pennsylvania corporation,** | **Case No. 2:08CV934 DAK** |
| **Defendant.** | |

This matter is before the court on (1) Defendant West Penn Allegheny Health Systems, Inc.'s ("WPAHS") Motion for Summary Judgment, (2) WPAHS's Motion to Strike Inadmissible Testimony of Mark Loosli, and (3) Plaintiff Republic Bank, Inc.'s ("Republic Bank" or "the Bank") Motion to Strike Paragraph 12 of Bonaroti Affidavit. A hearing on the motions was held on January 6, 2010. At the hearing, WPAHS was represented by Charles Kelly and Michael L. Ford. Republic Bank was represented by Michael N. Zundel. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the motions under advisement, the court has further considered the law and facts relating to these motions. Now being fully advised, the court renders the following Memorandum Decision and Order.

In this diversity action, Republic Bank has sued WPAHS for breach of contract. WPAHS

has moved for summary judgment, arguing that, as a matter of law, no contract was ever formed, and therefore the case must be dismissed.   Republic Bank disagrees and contends that genuine issues of material fact preclude the court from granting WPAHS's motion.

## FACTUAL BACKGROUND

Republic Bank owned a CT scanner and various other medical equipment.  The Bank claims that WPAHS agreed to purchase the CT scanner and workstation through an exchange of emails between agents of the respective parties.   On February 13, 2008, Mark Loosli (an employee of a company that had been hired by Republic Bank to sell the equipment), sent an email to an individual associated with WPAHS, stating that he understood that WPAHS had requested a proposed purchase price for the equipment.   Mr. Loosli listed the purchase price as $750,000 for the CT scanner and $30,000 for an ultrasound machine.   The recipient of the email from Mr. Loosli  responded that Mr. Loosli should deal directly with Michele Hutchison (Ms. Hutchison") of WPAHS.

On February 26, 2008, Ms. Hutchison, WPAHS's corporate contract negotiator, sent an email to Mark Loosli stating that "[w]e are interested in the 64 slice scanner, CT workstation, ultrasound and ultrasound table."  She went on to say "[o]ur offer is as follows:

Scanner - $600,000
CT Workstation - $50,000
Ultrasound and ultrasound table - $26,500

If there is a good time for us to talk live, let me know."

On March 4, 2008, Mr. Loosli responded that he had spoken to the president of the Bank about her offer and that he hoped to have additional information for her in the next day or so.  He

also raised an issue regarding a chiller for the CT unit but concluded by saying, "[a]nyway, something we can talk about."

On March 13, 2008, Mr. Loosli sent an email stating:

> I met with the bank president this morning and he gave me approval to sell . . . the 64 Slice Canner, CT Workstation and Ultrasound unit with table for the total amount of $676,000 as offered [by Ms. Hutchison in her email]. There is still some question regarding the cooler unit being moved to your location or left in place and a replacement provided for you. We can discuss that issue.
>
> Please let me know if you work through a purchase order system or if we need to put together a sales agreement.

On March 17, 2008, Mr. Loosli sent an email that included a draft copy of a proposed agreement for the sale.   In his email, he stated, "[p]lease review the attached [agreement] and then call me at your convenience to discuss [any] changes or additions you feel may be appropriate."  The proposed Agreement had a payment date "on or before April 15, 2008" and also contained an "as is" provision, stating that there was no warranty of any kind.

On March 24, 2008, Mr. Loosli emailed Ms. Hutchison, asking, "[j]ust wondered where we were in getting approval for the Agreement I sent to you in draft form?  Let me know."  She then sent an email back to Mr. Loosli asking, "[c]an you separate the ultrasound and table from the CT and workstation?  We are ready to proceed with the ultrasound, but I am still waiting on the CT."

Mr. Loosli then emailed her back asking, "[i]s it a matter of generating a budget for the CT or is there a question whether they are still interested?  We haven't been trying to market the

CT since receiving your offer, which we accepted.  Please let me know their position so I can discuss with the bank."   Ms. Hutchison emailed back, stating,"[f]inalizing the budget for the CT. We are still interested in the CT.  The hospital purchasing the ultrasound is ready to go."

Ultimately, WPAHS never signed the proposed agreement, and Republic Bank took the position that WPAHS had breached the contract and brought the instant lawsuit.

In this summary judgment motion, WPAHS essentially argues that because WPAHS never signed the contract and because it expired by its own terms on April 15, 2008, no contract was ever formed, and thus there was no contract to breach.  WPAHS also contends that there is no writing to satisfy the Statute of Frauds and that Mr. Loosli knew that a signed Sales Agreement was a condition precedent to contract formation.  According to WPAHS, the email exchanges were simply contract negotiations.

On the other hand, Republic Bank argues that an oral contract was formed when the Bank accepted WPAHS's offer and that the proposed Sales Agreement was merely to memorialize the already formed oral contract.   It also contends that, under the UCC, the exchange of emails can satisfy the writing requirement of the Statute of Frauds.  The Bank claims that there are many disputed material facts as to whether a contract was formed, including what was said and done by the parties and what was intended by the parties.   These facts, the Bank contends, must be decided by a trier of fact.

### DISCUSSION

The court agrees with Republic Bank that there are disputed issues of material fact about whether a contract was formed, and, more specifically, whether the more formal writing was

intended as a condition precedent to contract formation or merely as a memorialization of an

existing contract created by the email exchange of offer and acceptance.[1]   In *Adani Exports Ltd.*

*v. AMCI Export, Corp.*, 2007 WL 4298525 (W.D. Pa. December 4, 2007) (unpublished) the court

addressed a similar issue.   In *Adani*, the plaintiff sued for breach of contract and the defendant,

AMCI, contended no contract had been formed.   The court denied both parties' motions for

summary judgment because, as is the case here, there were disputed issues of material fact

regarding contract formation.[2]

Here, WPAHS argues that the issue of contract formation is an issue of law that the court

must decide.   As the *Adani* court recognized, however, contract formation is an issue of law only

"if the evidence of contract formation consists solely of [unambiguous] writings, or if the

material facts are not disputed by the parties."   *Id.* at *12.   In cases "where material facts are in

dispute, what was said and done by the parties, as well as what was intended by what was said

and done by the parties, are questions of fact to be resolved by the trier of fact."   *Id.*  (internal

quotes and citations omitted).   The *Adani* court also noted that "a party's intent to contract is

---

[1]  The parties agree that because both Utah and Pennsylvania have adopted the UCC, choice of law is not an issue.

[2]  In *Adani*, the court also concluded that "many courts applying the UCC in other jurisdictions have concluded that e-mails may be used to satisfy the Statute of Frauds."  2007 WL 4298525 *11 (citing cases).  Thus, the court concluded, "the Court is convinced that the Statute of Frauds will not preclude the enforcement of the contract. . . . The series of written communications [including emails] presently before the Court is sufficient to satisfy the requirements of § 2201." *Id.* *11.   This court agrees.

generally treated as an issue of fact."[3]  *Id.*;

Under Pennsylvania law, "[i]f the parties agree upon essential terms and intend them to be binding, a contract is formed even though they intend to adopt a formal document with additional terms at a later date."  *Shovel Transfer & Storage, Inc. v. Pennsylvania Liquor Control Bd.*, 739 A.2d 133, 136 (Pa.1999) (internal quotation marks and citation omitted).  "The fact that the parties intended subsequently to execute a signed writing does not preclude a finding that a contract was formed: if the minds of the parties met and the essential provisions of the contract were agreed upon, the contract was created, and the later writing is simply evidence of the agreement."  *Flight Systems, Inc. v. Electronic Data Sys. Corp.*, 112 F.3d 124, 129 (3d Cir.1997); *see also McKelvey v. Hamilton*, 211 P.3d 390, 397-398 (Utah Ct. App. 2009) (non-UCC case finding that "it is a basic principle of contract law that agreements are enforceable even though there is neither a written memorialization of that agreement nor the signatures of the parties.")  It is, of course, true that contracting parties may not intend to be bound in the absence of a signed writing.  Nonetheless, the law does not presume such an intent. *Wisdom Import Sales Company, L.L.C. v. Labatt Brewing Co.*, 339 F.3d 101, 109 (2d Cir.2003).  "Oral agreements are binding and enforceable absent a clear expression of the parties' intent to be bound only by a writing."  *Adani* 2007 WL 4298525 *12.

---

[3]  Utah law is the same.  *See O'Hara v. Hall*, 628 P.2d 1289 (Utah 1981).  In *O'Hara*, the Utah Supreme Court reversed the trial court's granting of summary judgment that a contract had been formed and held that where the evidence is conflicting, the issue of intent to form a contract is an issue of fact.  "Whether the parties intended to enter [into] a binding contract is . . . an issue of fact."  *Id*. at 1291.

As recognized by the *Adani* court, "'[t]he Uniform Commercial Code, its draftsmen mindful of the haste and sloppiness, and disregard for lawyerly niceties that characterize commercial dealing, tolerates a good deal of incompleteness and even contradiction in offer and acceptance.'" *Adani*, 2007 WL 4298525 *20 (quoting *Architectural Metal SYS., Inc. v. Consolidated SYS., Inc.*, 58 F.3d 1227, 1230 (7th Cir. 1995)).

In the instant case, there are clearly disputed factual issues as to whether a contract was formed, and therefore the court cannot conclude, as a matter of law, that no contract existed, and WPAHS's Motion for Summary Judgment must be denied.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that (1) Defendant West Penn Allegheny Health Systems, Inc.'s Motion for Summary Judgment [docket #22] is DENIED; (2) WPAHS's Motion to Strike Inadmissible Testimony of Mark Loosli [docket # 31] is DENIED AS MOOT; and (3) Plaintiff Republic Bank, Inc.'s Motion to Strike Paragraph 12 of Bonaroti Affidavit [docket # 27] is DENIED AS MOOT.

This case is set for a final pretrial conference on February 24, 2010 at 2:30 p.m. and a 3-day bench trial beginning on March 9, 2010.   The trial will begin each day at 8:30 a.m. and continue until approximately 2:00 p.m., with two fifteen breaks during that period.

DATED this 23rd day of February, 2010.

BY THE COURT:

_____

DALE A. KIMBALL
United States District Judge

7